IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL CAPIZZI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-276-PWG |
| | ) | |
| RHEEM MANUFACTURING | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Capizzi was an employee of Defendant Rheem Manufacturing Company ("Rheem") and alleges that he was subjected to retaliation and discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., the Alabama Age Discrimination in Employment Act ("AADEA"), § 25-1-20, *et seq*., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. This matter is before the court on Rheem's motion for summary judgment. (Doc. 26). The motion is fully briefed and taken under submission on the record and without oral argument.

For the reasons stated herein, the motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.

1

## I.   JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Capizzi's federal causes of action, and the court may exercise supplemental jurisdiction over Capizzi's state law claims pursuant to 28 U.S.C. § 1367.   The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both.  *See* 28 U.S.C. § 1391.  On April 29, 2015, the above-styled matter was referred to the undersigned for review by United States Chief District Judge William Keith Watkins. (Doc. 5); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).  The parties consented to the jurisdiction of the undersigned in their Rule 26(f) planning meeting report. (Doc. 15 at ¶ 4(k)).  On June 22, 2015, the above-styled matter was reassigned to the undersigned as presiding Judge pursuant to 28 U.S.C. § 63(c)(1). (Doc. 16).

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012,

2

1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Fed. R. Civ. P. 56(e) (emphasis added). Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When opposing a motion for summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996)

3

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  "If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

## III.    BACKGROUND AND STATEMENT OF MATERIAL FACTS[1]

Capizzi began his employment with Rheem on June 7, 2010, as a Laboratory Engineering Manager in a department that conducted testing of water heaters manufactured by Rheem. (Doc. 28-3 at p.15). Jack Scanlon was Capizzi's direct supervisor during Capizzi's tenure at Rheem. (Doc. 28-3 at p.18). Scanlon and Capizzi became friends outside of work and remained so until sometime in late 2013. (Doc. 28-3 at pp.22-23).  One of the Rheem employees who worked under Capizzi's supervision was laboratory technician Taylor Oakley. (Doc. 28-3 at p.35).

---

[1]  The following statements are the "facts" for summary judgment purposes only, and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir.1994). The court has gleaned these statements from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

On May 27, 2014, test engineer Chris Ivey informed Capizzi that Oakley was complaining about the condition of the water used for laboratory testing. (Doc. 28-3 at p.48).   When Capizzi asked Oakley what the problem was, Oakley responded, "Everything's messed up. I'm going to turn you guys into the regulators, this water isn't working right..." *Id.*   Capizzi testified that he continued to talk with Oakley attempting to calm him down and get Oakley to install a "chiller" on the testing system to alleviate the problem. *Id.* Oakley refused to install the chiller or calm down, began referring to Capizzi as "ma'am," and brandished a pipe wrench at Capizzi.  *Id.* Capizzi said to Oakley, "If it wasn't for Rheem – the Rheem job, the Rheem facility, Rheem time, I could prove I'm a man – my gender." *Id.* Oakley responded, "That's it. I'm gonna blow your F-ing head off." *Id.* Oakley eventually left the work site and Capizzi reported the incident to Rheem employee John Mitchell in the human resources department ("HR"). *Id.*

At the time of the Oakley incident, Abbe Hockaday was employed as the Director of Human Resources for the Rheem Water Heater Division (Doc. 28-19 at ¶ 4), and John Anthony was employed by Rheem as the Executive Vice President of Human Resources. (Doc. 28-21 at ¶ 4).  In the days following the Oakley incident, Hockaday requested that Scanlon and Mitchell participate in the investigation of the incident. (Doc. 28-18 at p.4).   Based on the reports of Mitchell and Scanlon,

Hockaday decided "to terminate Michael Capizzi's employment with Rheem." (Doc. 28-19 at ¶ 7). Specifically, Hockaday "made the decision to recommend that Rheem terminate Michael Capizzi's employment with Rheem based on his use of inappropriate language and behavior to a subordinate employee and because he threatened another employee. [Hockaday] had to seek the approval of John Anthony with regard to this recommendation... [but did] not recall discussing anything with John Anthony about Jack Scanlon's opinion on the disciplinary action to be taken." (Doc. 28-19 at ¶ 11). Anthony, in turn, "relied on the reports and recommendation I received from Abbe Hockaday" in making his decision to terminate Capizzi's employment. (Doc. 28-21 at ¶ 6). Anthony further stated, "While I conferred with Abbe Hockaday and considered her recommendation to terminate Michael Capizzi's employment, the decision was mine to make. Additionally, I did not ask Jack Scanlon for his opinion on the appropriate action with regard to Michael Capizzi." (Doc. 28-21 at ¶ 11).

On June 12, 2014, Senior Division Human Resources Manager Mark Hilde and Scanlon met with Capizzi and informed him that his employment with Rheem would be terminated effective June 15, 2014. (Doc. 28-22 at ¶ 6). On June 20, 2014, Capizzi filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, that Rheem engaged in age

discrimination and retaliation against him. (Doc. 28-4 at p.2). The EEOC issued a

Notice of Right to Sue to Capizzi on January 27, 2015. (Doc. 1-1 at p.1).  On April

24, 2015, Capizzi filed his Complaint in this court alleging:

> Count I - Age Discrimination in Violation of the ADEA and AADEA.
> (Doc. 1 at ¶ 21-24).
>
> Count II - Retaliation in Violation of Title VII of the Civil Rights Act
> of 1964. (Doc. 1 at ¶ 25-29).
>
> Count III - Discrimination and Retaliation in Violation of the AADEA.
> (Doc. 1 at ¶ 30-34).

## IV.   DISCUSSION

### A.   Election Between ADEA and AADEA Claims

Rheem first argues that Capizzi "must elect to proceed under either the ADEA

or the AADEA" and that he "must elect the statute under which he seeks to recover."

(Doc. 27 at p.19).   The "dismissal provision" of the AADEA provides as follows:

> "Any person aggrieved may elect to pursue their remedies under
> Title VII of the Civil Rights Act of 1964 as amended, and the Age
> Discrimination in Employment Act 29 U.S.C. Section 621 or in the
> alternative bring a civil action in the circuit court of the county in which
> the person was or is employed for such legal or equitable relief as will
> effectuate the purposes of this article. However, if an action is brought
> in the federal court, any action pending in the state court shall be
> simultaneously dismissed with prejudice. Further, any party bringing
> action under this section shall only be entitled to one recovery of
> damages. Any damages assessed in one court will offset any entitlement
> to damages in any other state or federal court. In any action, a person
> shall be entitled to a trial by jury of any issue of fact in any action for

> recovery of amounts owed as a result of a violation of this article, regardless of whether equitable relief is sought by any party in the action. Any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article."

§ 25-1-29, Ala. Code 1975. Rheem acknowledges that at least one decision in the Middle District of Alabama has rejected the proposition that the "dismissal provision" of the AADEA requires plaintiffs bringing simultaneous actions under the ADEA and AADEA to select one action or the other. *See Wallace v. Jim Walter Homes, Inc.*, 68 F.Supp. 2d 1303, 1303-4 (M.D. Ala. 1999)("The dismissal provision [of the AADEA] thus operates to conserve the judicial resources of Alabama state courts, not to make claims unavailable for simultaneous pursuit in a single forum."). Although Rheem argues that contrary decisions from the Northern District of Alabama are "persuasive," Rheem offers no binding authority for this proposition. Moreover, "[t]he court shall grant summary judgment if the movant shows there is no genuine issue of material dispute as to any material fact **and the movant is entitled to judgment as a matter of law**." Rule 56(a), Fed. R. Civ. P. (emphasis added). Rheem offers no binding authority that as a matter of law the ADEA precludes rather than supercedes simultaneous consideration of claims under the AADEA. Accordingly,

Rheem's motion for summary judgment on this issue is due to be denied.

    B.    Exhaustion of Administrative Remedies

Rheem next argues that Capizzi has not exhausted his administrative remedies as to certain claims. Specifically, Rheem argues that "[i]t is undisputed that Rheem fired [Capizzi] effective June 15, 2014. ... With the assistance of counsel, [Capizzi] filed his EEOC Charge of Discrimination on June 20, 2014. ... This is the only EEOC Charge he made. Consequently, the only claims he administratively exhausted are those in that EEOC Charge. In the Complaint, [Capizzi] alleged that one of the reasons Rheem terminated his employment was that he opposed race discrimination." (Doc. 27 at p.23). Rheem therefore argues that several other claims should be barred because they were not stated in the EEOC Charge and that the Complaint did not provide fair notice of those claims. (Doc. 27 at p.28)("In his deposition and in his responses to interrogatories, [Capizzi] provided responses that indicate an intention to attempt to pursue alleged hostile work environment claims, arising from events prior to the termination of his employment, but the Complaint gave no fair notice of any intention to pursue such claims because it only alleged claims predicated on the termination of Plaintiff's employment.").

However, Capizzi has stated in response that he is not seeking relief for claims of racial discrimination and "hereby withdraws any claim of retaliation based upon

opposition to racial discrimination or any claim otherwise related to the claim of race discrimination." (Doc. 29 at p.26). Capizzi further disavowed any claim of a hostile work environment ("Plaintiff does not expect the issue of a hostile work environment to come before the jury in this case." (Doc. 29 at p.26)) or a retaliation claim based upon opposition to discrimination against an African-American employee. (Doc. 29 at p.27). Accordingly, to the extent that Capizzi's Complaint may have otherwise been construed as making a claim of retaliation based upon opposition to racial discrimination or any claim otherwise related to the claim of race discrimination or a hostile work environment, Rheem's motion for summary judgment on those claims is due to be denied as moot.[2]

C.    Retaliation Claim

Rheem next argues that Capizzi "cannot demonstrate a triable issue as to his ADEA or AADEA retaliation claim." (Doc. 27 at p.46).

> Title VII makes it illegal for "an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.

---

[2]Rheem also argues in the alternative that Capizzi "lacks sufficient evidence to require trial of his retaliation claim based on his alleged opposition to discrimination against an African-American employee." (Doc. 27 at p.29). Because summary judgment is otherwise moot as to this issue, discussion of Rheem's alternate argument is pretermitted.

§ 2000e–3(a). The ADEA contains a similar anti-retaliation provision. *See* 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, plaintiffs must prove that: (1) they engaged in statutorily protected conduct; (2) they suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008).

"Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001). "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.*

*Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1193-94 (11th Cir. 2016).

For the purposes of this motion for summary judgment, "Rheem assumes for the sake of argument that Capizzi's testimony regarding his conversation with Scanlon constitutes evidence that he engaged in protected conduct under the ADEA. Rheem does not dispute that the termination of Capizzi's employment constitutes an adverse employment action." (Doc. 27 at p.47 n.37).  Rheem argues that Capizzi "cannot offer sufficient evidence of causation between any act of protected conduct and the termination of his employment ... because he cannot point to any evidence that the decisionmaker for the decision to dismiss him from employment with Rheem knew of any alleged protected conduct at the time the dismissal decision was made." (Doc. 27 at p.47-48).

> To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.' " *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression...."). That requirement rests upon common sense. **A decision maker cannot have been motivated to retaliate by something unknown to him. As with most facts, the defendant's awareness can be established by circumstantial evidence**. *See Goldsmith*, 996 F.2d at 1163.

*Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)(emphasis added). Rheem argues that Capizzi "has no evidence whatsoever that Anthony, or even Hockaday had any information about any alleged protected conduct in which [Capizzi] engaged at the time of the decision to terminate [his] employment." (Doc. 27 at p.48).

Capizzi argues that the record reflects some degree of conflict regarding who the actual decision maker was. Hockaday testified that she made the decision to terminate Capizzi's employment "in collaboration with a few other individuals" including Scanlon of whom she testified that she was in "[c]ommunication with him in agreement for the termination." (Doc. 28-18 at p.4). Hockaday further testified that

at the time of the decision to terminate Capizzi's employment, she was unaware of Capizzi's claim that Scanlon told him of a list of older employees slated for termination. (Doc. 28-18 at p.25).  Hockaday submitted an affidavit in which she stated:

> 7. In making my decision to terminate Michael Capizzi's employment with Rheem, I considered the written statements and information Jack Scanlon and John Mitchell had compiled. ...
>
> ...
>
> 9.   When I learned that Michael Capizzi had asked his subordinate, Taylor Oakley, to take their conversation outside, I made the recommendation to John Anthony to terminate Mr. Capizzi's employment for violation of the Workplace Violence Policy. I also recommended the termination of Michael Capizzi's employment for inappropriate behavior for a supervisor because the way he engaged with Taylor Oakley demonstrated lack of professional behavior and was an inappropriate leadership response as a manager.
>
> ...
>
> 11. I made the decision to recommend that Rheem terminate Michael Capizzi's employment with Rheem based on his use of inappropriate language and behavior to a subordinate employee and because he threatened another employee. I had to seek the approval of John Anthony with regard to this recommendation, and I did so. I do not recall discussing anything with John Anthony about Jack Scanlon's opinion on the disciplinary action to be taken.

(Doc. 28-19 at ¶¶ 7, 9, 11).  Hockaday denied having any knowledge of Capizzi making complaints of age discrimination and denied considering Capizzi's age "in

making my recommendation that his employment with Rheem be terminated." (Doc. 28-19 at ¶¶ 12,15).

Anthony testified that he made the decision to terminate Capizzi's employment, denied that anyone else played a role in the decision to terminate Capizzi, and stated that Hockaday "was responsible for investigating the situation and reviewing it with me." (Doc. 28-20 at p.4).   Anthony testified that Scanlon "was part of the management team that investigated the situation and reviewed it" but denied that Scanlon's opinion was solicited with respect to the decision to terminate Capizzi's employment. (Doc. 28-20 at p.4). Anthony submitted an affidavit in which he stated: "While I conferred with Abbe Hockaday and considered her recommendation to terminate Michael Capizzi's employment, the decision was mine to make. Additionally, I did not ask Jack Scanlon for his opinion on the appropriate action with regard to Michael Capizzi." (Doc. 28-21 at ¶ 11).  Moreover, Anthony stated that "I was never made aware that Michael Capizzi made any complaints regarding age discrimination while he was employed at Rheem." (Doc. 28-21 at ¶ 13).

Scanlon submitted an affidavit in which he stated that at the time of the incident with Oakley, "it was my opinion that [Capizzi] should be given a final warning for his conduct" but that after communicating with Hockaday, "I understood from this that the decision was not mine to make." (Doc. 28-15 at ¶¶ 34-35).  Scanlon

14

testified that he participated in the investigation of the incident with Oakley, and his recommendation was not to terminate Capizzi's employment. (Doc. 30-1 at p.4).

Even viewing the evidence in the light most favorable to Capizzi, the record is clear that Hockaday was aware that any decision she reached to recommend the termination of an employee's employment was subject to the ultimate decision maker Anthony. There is no evidence in the record to suggest that Hockaday or Scanlon had independent or ultimate authority to terminate the employment of anyone working for Rheem. The record reflects that multiple people including Hockaday and Scanlon were responsible for investigating the incident between Capizzi and Oakley, but the only party at Rheem with the authority to make the termination decision was Anthony and that Anthony was the decision maker in this matter.

Nevertheless, Capizzi argues that "Scanlon's own words evidence that senior management compiled the illegal list which targeted five older employees in their late 50s and early 60s." (Doc. 29 at p.28). Although Capizzi makes no citation to the record in support of this argument, he appears to be relying on his deposition testimony in which he stated that a few weeks before the incident with Oakley:

> Mr. Scanlon called me into his office and said, Senior management and HR have a list of everybody by age, and I have people in their mid 50s that have to go. ... And I says, We can't do that based on age. He says, yes we can, if we don't tell anybody. ... And I says, How -- you can't do this. It's against the law. It's age discrimination. And he says, The

decision is done. It's going to happen. ... I says, I'm not going to do it based on age. He said, You're on the list too.

(Doc. 28-3 at p.58).  Based on this testimony, Capizzi argues that "Mr. Anthony and Ms. Hockaday were the senior human resources executives in charge of [Capizzi's] division. The fair inference from Mr. Scanlon's statement is that Mr. Anthony and Ms. Hockaday, both of whom claim to have made this decision, knew all about this list." (Doc. 29 at p.28).  Capizzi admits that Scanlon denies this entire allegation. (Doc. 29 at p.4).

> In response to a summary judgment motion ... the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

Lewis v. Casey, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In this case, the only evidence in the record of any plan to terminate Rheem employees based on their age or of Capizzi's complaint that this plan was a violation of the ADEA comes from Capizzi's deposition testimony in which he states what Scanlon claims was communicated to him by unnamed members of senior management and HR.  Any statements that senior members of management and HR made to Scanlon and that Scanlon made in turn to Capizzi would be hearsay.

16

The general rule is that inadmissible hearsay "cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citing cases from six Circuits). Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This rule also applies to testimony given on deposition. *See Randle v. LaSalle Telecomms.*, Inc., 876 F.2d 563, 570 n.4 (7th Cir.1989).

Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." *See Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999). ... These courts have coined these phrases from language appearing in the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which held that a nonmoving party, in opposing a motion for summary judgment, need not produce affidavits, but may refer the district court to "pleadings, depositions, answers to interrogatories, and admissions on file," as provided by Fed.R.Civ.P. 56(c).

We believe that the courts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

*Macuba v. Deboer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999)(footnotes and some

citations omitted).

17

>The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (noting that an affidavit "can be reduced to admissible form at trial" by calling the affiant as a witness). If, however, the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, we may not consider the hearsay statement at the summary judgment phase. The possibility that the declarant might change his sworn deposition testimony and admit to the truth of the hearsay statement amounts only to "a suggestion that admissible evidence might be found in the future," which "is not enough to defeat a motion for summary judgment." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996).

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012). Capizzi argues that from his testimony regarding his meeting with Scanlon, there is a fair inference that Anthony and Hockaday are the unnamed members of senior management and HR responsible for the list. (Doc. 29 at p.28). Hockaday and Anthony have both denied in sworn testimony having knowledge of any such plan or that such a list existed and further denied having any knowledge of Capizzi complaining to Scanlon of age discrimination. (Doc. 28-19 at ¶¶ 12,15; Doc. 28-21 at ¶ 13).

Capizzi does not allege that he made a complaint of age discrimination to anyone other than Scanlon. Moreover, even if Capizzi's hearsay statements regarding the alleged plans of "senior management and HR" were otherwise admissible to demonstrate knowledge of the list to Anthony and Hockaday, Capizzi has not cited any evidence in the record that would indicate that Anthony as decision maker (or

Hockaday, to the extent she might otherwise be considered a decision maker) was ever aware that Capizzi engaged in protected conduct by complaining to Scanlon about the alleged plan to terminate the employment of older employees such that they could retaliate against him by terminating his employment. In other words, even assuming that Anthony and Hockaday "knew all about this list" as Capizzi suggests, this assumption would not give rise to a fair inference that they also knew about Capizzi's protected conduct at the time the decision was made to terminate his employment. Accordingly, Rheem's motion for summary judgment as to Capizzi's claim of retaliation in Count II of the Complaint is due to be granted in Rheem's favor.

D.   Discrimination Under ADEA/AADEA

Rheem next argues that Capizzi lacks evidence to demonstrate that Rheem discriminated against him on the basis of his age when it terminated his employment. (Doc. 27 at p.49). A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was based on intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). A plaintiff may meet this burden of proof either through direct evidence or

circumstantial evidence.  Where there is direct evidence, the court need not engage in the familiar burden shifting paradigm articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Rheem challenges Capizzi's assertion that there is direct evidence; however, this case presents the rare example of direct evidence of age discrimination.  Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption.  *See, e.g.*, *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001), *overruling on other grounds recognized by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) (holding that the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require ... an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption"); *Merritt v. Dillard Paper Co.*, 120 F.2d 1181, 1189 (11th Cir. 1997)

(same); *Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same); *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982) ("Where the evidence for a *prima facie* case consists ... of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the *prima facie* evidence the ultimate issue of discrimination is proved; no inference is required."). *See generally Black's Law Dictionary* 577 (7th ed. 1999) (defining "direct evidence" as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.").

In the context of employment discrimination cases, direct evidence of an employer's intent to discriminate on the basis of some prohibited characteristic — in this case Capizzi's age — is more specifically defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter*, 132 F.3d at 641 (in turn quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)). As such, "direct evidence of discrimination is powerful evidence capable of making out a *prima facie* case essentially by itself." *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (*per curiam*). "In the face of direct

evidence, an employer must prove that the same employment decision would have been made absent any discriminatory intent." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

> When a *prima facie* case is established by direct evidence, a defendant's rebuttal burden is heavier than it would be under a *McDonnell Douglas prima facie* case. As we stated in *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982),
>
>> "Under the *McDonnell Douglas* test plaintiff establishes a *prima facie* case when the trier of fact believes the four circumstances outlined above which give rise to an inference of discrimination. Where the evidence for a *prima facie* case consists, as it does here, of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the *prima facie* evidence the ultimate issue of discrimination is proved; no inference is required. Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, non-discriminatory reasons. Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor."
>
> (Emphasis in original; footnotes omitted).

*Buckley v. Hosp. Corp. of Am.*, 758 F.2d 1525, 1529-30 (11th Cir. 1985).

In this case, viewing the evidence in the light most favorable to the plaintiff, there is substantial direct evidence from which a reasonable jury could conclude that

Rheem acted with discriminatory intent. The significant evidence in this case is Capizzi's testimony that Scanlon, as his direct manager, directed him to come up with a plan for the termination of multiple employees because of their ages.[3]  Capizzi's refusal to cooperate with the plan Scanlon allegedly announced was met with Scanlon stating that Capizzi was on the list of older employees whose employment was to be terminated, and approximately six weeks later, Capizzi's employment was in fact terminated.

Rheem introduced evidence that Capizzi was terminated, not because of a plan to terminate employees of his age, but because of his behavior during the incident with Oakley. This articulated reason would be sufficient to rebut a *prima facie* case developed under the *McDonnell Douglas* test. Here, however, there is evidence from which the jury could find that Capizzi established a *prima facie* case by direct evidence of discriminatory intent. If so, Rheem's evidence of a nondiscriminatory reason for the termination of Capizzi's employment merely creates a jury question as to whether Rheem has proved by a preponderance of the evidence that the decision would have been reached even in the absence of age discrimination. Accordingly,

_____

[3]As discussed *supra*, portions of Capizzi's testimony regarding Scanlon's alleged comments contain double-hearsay.  However, the portions of Scanlon's alleged statements which do no implicate inadmissable hearsay, if believed, are still sufficient to raise a material issue of whether Scanlon was acting, alone or in concert with others at Rheem, to terminate the employment of older employees.

Rheem's motion for summary judgment on the issue of age discrimination is due to be denied.

## V.      CONCLUSION AND ORDER

For the reasons stated, it is **ORDERED**:

Rheem's motion for summary judgment (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** in that Capizzi's claim of Retaliation in Count II of the Complaint fails because he has failed to provide any evidence that the decision maker in the termination of his employment was aware that he had engaged in protected conduct.  The motion for summary judgment is otherwise **DENIED**.

**DONE** and **ORDERED** this 9th day of August, 2016.

/s/ Paul W. Greene_____
United States Magistrate Judge

24